'Judge Milhi

dissenting from the majority of the Court, delivered his own opinion.
I cannot concur in the rule that mokes three suits necessary, before an administrator or executor and }iis sureties can be reached on their official bond. The executor or administrator, when he undertakes the trust, impliedly engages to perform his duty correctly, and by law he becomes personally liable for performing it wrongfully, and without his bond would be liable to an action on the case, for some parts of hismal-administration, and to debt, for a devastavit, for others. What then is the bond designed for, but to operate as a covenant, or an express written agreement, that he will perforin his duty correctly, when otherwise the undertaking would be only implied? This is the idea attached to every other official bond, given by officers bf government, and of sheriffs particularly, and they have been uniformly treated in this mode, by all courts, and in all controversies, and I am unable to perceive the reason, which makes this bond an exception, and casts around it a slow, circuitous and numerous set of proceedings by suits, before the bond is of any use, and before it cau be broken.
*110 The language of the law, to every executor anil administrator, as well as to other officers who are bound to execute bond before entering on the duties of their respective offices, is simply this: “It is true, from the acceptance of your office, it is implied that you will faithfully perform it, but this implication or understanding is not enough; you must express it, and that by writing, and leave that writing deposited for the use of all whom your acts may injure, so that they may have the certain evidence against you of a bond, on which they can recover, instead of the more weak evidence of implication of lav/, or parol testimony.”
According to this principle, all other bonds of officers have been construed. The sheriff without, or before his bond, washable to an action of debt or case for an escape, or false return, or other acts of malfeasance; and since his bond is required, he has been held liable in cither mode: that, is, the party injured may take his old remedy, or proceed on his bond at once, so soon as he has evidence, that he is injured by the acts of the officer. So an executor or administrator, is either liable to the ancient remedy of debt by devastavit, at common law, as he would be if he had given no bond, or he is liable to an action on the bond for the same cause so soon as there is evidence of his malconduct, and the doctrine which imposes the necessity of pursuing both remedies, instead of an election of cither one or the other, is an invention of courts, conflicting with the statute and the general analogies of the law, and favors circuity and multiplicity of actions which the law abhors.
But there is another argument against the three actions, which I conceive has no answer. The sureties and the executor or administrator himself as principal sign the same instrument, and by its terms, all the obligors are made personally liable, by the same words, and at the same moment; and it is impossible to find the case where one of the obligors shall become liable for a breach, and all not be liable for the same breach at the same time; yet the doctrine of three suits does make one person liable, when' *111 the other is not; the executor is made individually liable in the action for devastavit, when, and because his securities are not yet liable contrary to the letter of the bond and intention of the act requires it.
The action of the creditor on his original demand against the executor or administrator, as such, is in substance, not a proceeding in personam, but in rem, against the fund in the hands of the defendant, who is made defendant as the stakeholder or depositee of the chattels of the decedent. The law did not, and could not provide that any person should represent the decedent by assuming personally his responsibilities, but only one to take care of, and dispose of the fund in discharge of those liabilities; and therefore, as the executor or administrator is bound only for the correct disposition of the fund, the action against him in the first instance is proper, for the purpose of trying whether there is, or is not a debt, and assets to discharge it. These points are settled by the first judgment, and execution goes, not against the executor, but against tlie estate in his hands. If the fund cannot be gotten by the officer, it proves that the executor attempts to dispute these two points, which are supposed to be settled against him, and conceals the estate, or has wasted it. Then, and not before his personal liability begins, or becomes apparent; then his bond is broken; and why is he not liable upon it? or why, or how, is he personally liable,, and his securities not ?
The rule that whenever he is, or becomes, personally liable, his sureties are also liable, accords with the doctrines of the law as to every other breach of his bond. If he fails to return an inventory, when required to do so by the court, he and his sureties are liable on their bond. For it is so held in the only English case which touches the subject, Greenside vs. Benson, mentioned 3 Atk. 348.
If he should fail to settle his accounts when required by the court, he is guilty of an express breach of his bond.
*112 If lie fails to pay over to any distributee, the amount due after his accounts are settled, the balance', struck and partition made, he is liable on his bond at law, without any further suit, and so the law is held to be, by this court, in the case of Jackson vs. the Bourbon justices, for the use of Robinett’s heirs, 2 Bibb 292.
If an administrator should fail to surrender his letters of administration, after the production and proof of a will, and after he is summoned by the proper court to surrender, it is evident he would at once be liable for a breach of his bond.
So, to he consistent, he ought to become liable on Ids bond so soon as a debt is proved against the estate, and that be has assets to discharge it, and that he keeps the estate out of reach ox execution; and I cannot see why the person injxired has to go a íxxoi’e tedious and formal round, to get at the action on the bond, for a breach of this stipxxlation, than, for a breach of any other. It is not only making an exeeixtor’s, or administrator’s bond an exception from all other official bonds; but it is making one breach of that bond, aix exeeptioxx from all other breaches of the saxne instrument, although they are all expressed in terms equally strong, and one does not place personal liability at a greater distance than the other.
One l’eason that may he urged for these three suits, is that all are a greater protection to the sureties, than a lower number would be, and that it may be a secxxrity to them to place their liability at a greater distance from them. If the law compelled the creditor to pursue the executor, on his judgment in the action for devastavit, to insolvency by execution, before he could sue the sureties on their bond, as an assignee is compelled to pursue the obligor before be can resort to his assignor, so that the sureties would only stand as ultimate sponsors for the failure of the principal, to make xxp the fund, it is .admitted that the rule xnight have equity in it, and if the law was so, I should he content. But neither the law nor the terms of the bond admit of this; nor is it pretended that there is any obligation on *113 •tlics creditor to pursue the executor on the second judgment to insolvency. But he may cease further pursuit at the moment of judgment without execution, and then commence an action on the bond. Why then this second action or judgment before the third? The second is not to be executed before the third, but the reason assigned is, that the second is necessary evidence in the third, and that nothing can be proved on the third trial, without using the second. This is the pivot on which the controversy is made to turn, and this is the apparent necessity of the second judgment before the third; of course its force will now be examined.
It is held in 1 Saun. 386, 2 Wash. 187, and acknowledged m the case of Gordon’s administratrix vs. Justices of Frederick, 1 Munf. 1, and expressly decided by this court in the case of Walker vs. Kendall, Hard. 404, that in case of a judgment against an executor or administrator, even by default, lie could not be permitted, in an action for the devastavit, to plead plcne administnwit, and the return of nulla bona, on an execution on that judgment, was conclusive .tliat the executor had wasted the estate. Besides at common law, the sheriff need not return nulla bona, on the execution against the executor as such, but that the executor had wasted the estate, and on that return, the plaintiff was at once entitled to a capias ad satisfaciendum, or a fieri facias de bonis propriis, 1 Tidd, 933. Acid to this, on the ruturn of pulla bona, a fieri facias might go against the goods of the decedent, with a clause therein, directing the sheriff to levy it on the proper goods of the defendant, if it should appear to him that the defendant had wasted the estate. To ascertain this waste, the sheriff held an inquest, called a scire fieri inquiry, to find whether the defendant had wasted the goods, and on that being found, the fieri facias was levied on the proper estate of the defendant. Or the plaintiff, on the return of nulla bona, might have a scire facias to the defendant, to shew cause why the plaintiff should not have execution of the proper goods of the defendant. Or, finally, the plaintiff, on this same return, might bring his action of debí fox a devastavit, in which the former judgment was *114 conclusive, that there were assets sufficient, aud the return of nulla bona, was conclusive that these assets had been wasted.
Now from all this, it is evident, that the first judgment was clear proof, not only of a sufficiency of assets, and the return on the execution, of waste, but they were also conclusive evidence that the executor was personally liable; and that moment he becomes so, the bond, both in its letter and spirit, attaches and includes the case, and lie maybe sued thereon. Why then was the action for a devastavit introduced? Not, as seems to be supposed by the Virginia authorities, to convict the principal of the fact of waste, for further use, but for the very purpose of collecting the debt out of his individual estate; because in England they had no remedy on the bond. For in that country an executor gave none, and although an administrator did give a bond to the ordinary, somewhat similar to our form; yet that bond belonged to the ordinary alone, and was for his own indemnity, and unless he pleased to assign it, no one could use it; and their statute, like ours, did not give every one injured a right to use it without assignment. If it had, an action on the bond would have followed at the election of the party, instead of the individual action for the devastavit against the executor; and herein consists the difference between our case and those of the British administrat ors. They must then omit the action on the bond, for they could not get at it, and take the single action for devastavit alone. Here the creditor may take either, at his election, or the statute allowing every one injured to sue, has done little or nothing for him. The error seems to be in supposing that he must still sue for a devastavit, the bond notwithstanding, and that what he was driven to by necessity in England, ho must here also take by force of law, although a, bond is presented to him, with a more safe remedy thereon given by the statute.
From this collation of authorities, it is evident that the conclusion, that the verdict and judgment in the second action is necessary evidence in the *115 third, on the bond, without which, the third action cannot be maintained, is based on mistaken premises. The law is, that the evidence is complete and conclusive without, and before this verdict and inent in the second at lion, and this verdict and judgment can prove no more than what was manifest before, by evidence of the first degree; and they cannot rise higher than their source, and become still more conclusive.
In short, this second action could not be, and never was designed in England, for evidence in air-other action; for there, no other action existed. Is it not therefore, a court invention in this country, not found in the statute, to say that it must here be done for evidence, while it was there done, not for evidence in future, hut from necessity.
There is a provision in the act regulating these bonds, which is supposed to have some bearing on this point, and to render the three actions necessary. That provision declares, that no security shall be chargeable beyond the assets, by reason of any omission or mistake in pleading, or false pleading of his principal. A little attention to the evil intended to be provided against, will indicate an easy and complete operation of this provision, without affecting the question, or making three actions necessary. We have already seen that even a judgment against the estate by default, admitted assets sufficient, and that admission could not he again questioned; that the return of no goods, on the execution, proved waste, and that conclusively. Now it was obvious, according to well known principles, that such judgment, execution and return, would not only conclude the executor or administrators, hut also his sureties, who had undertaken for him, and guarantied his acts, and this without being parties to that judgment and execution; because they were sureties, or rather sponsors, for his acts.. If he .admitted assets, or neglected to plead the want of them, the sureties might he compelled to pay far more than the value of the estate. This provision was therefore added, to screen them from the conclusive force of such judgment and execu *116 tion, beyond the real amount of assets. To tlisil amoul,t) their obligation or undertaking for their principal, was to be good, and his acts would bind beyond that, they were of no force. Hence, in the trial of any issue between them and creditors, the amount of assets was always left open,' and not concluded; and if waste was established, the amount wasted was still a matter of inquiry. But how this section intimates the requisite of three actions, to come at a truth in the third, which was equally palpable, and accessible in the second action, I am unable to perceive; because we have already seen that the second action furnished no higher or better evidence in the third, than the first did in the second; and indeed, neither second nor third, could be any evidence beyond the real amount of assets, originally placed in the hands of the principal. What could the second prove that the first did ncit? The same may be said of our act of 1811. Tt places the executor himself in all. actions after the first, whether first or second, on tiie same footing with tiie sureties. His previous acts in omitting to plead, or in. pleading falsely in the first, action, shall not conclude him, in subsequent proceedings, beyond the amount of assets. This is a subject left open by both these acts to the last, and may acquit him and his sureties of every thing but costs, in even the last of the three actions; and surely if this matter is to be left open till the lust verdict, and must to that moment remain in uncertainty, it is a sporting with the rights of the creditor, and treating him with some cruelty, to compel him to run his three rounds instead of two, and leave him liable to be outstripped in .the third, when his fate could have been as easily known at the close of the second. In the second action his proof is as strong as it can be in the third, and the second adds no weight to it; and it cannot he correct for mere forms’ sake, but at his expense, to impose on him the circuity', and number of tliree instead of two.
In short, both these provisions do fiothing moré than keep the amount of the assets open to inquiry. Within that amount, the acts of the executor must Wild the sureties as before, and it is clear, thát if *117 Ills acts can bind the sureties at all, or be any evidence against them, as far as they are established by the first action, it is as good evidence against them, as what is proved in the third, and if what is proved in the first, would be no evidence against them if the second action was on the bond, it will as clearly follow, that what is proved in the second action against the executor or administrator alone, will be no evidence against the sureties in the third, and therefore the whole number is unnecessary; which would tend to prove that the sureties might be as well sued in the first instance as the last;
If this question had never been prejudiced by authority, it could be one of no difficulty., Here, however, a hind of estoppel is presented to us, which demands that we should be content with saying lex ita scripta est, without looking into the why and wherefore. In the case of Braxton vs. Winslow, 1 Wash. 31, a creditor had brought his action in the first instance on the bond, and it was insisted that the action was premature. Judge Pendleton in delivering the opinion of the court, not satisfied with saying that the action would not lie, and that a previous proceeding againt the estate, and the executor in his fiduciary character was necessary, proceeded to tell the creditor minutely what he must do, and prescribed not only a first, but also a second and a third action, and to this the necessity of three actions owes its birth, and never was before heard of. The weight of his name, in this instance, was seen and felt, and the success óf this doctrine is strong testimony in favor of his judicial character; for no other name could have given currency to it. But while I concede to him the pinnacle of judicial preeminence in his day, yet I well know, that he could look down upon, as his inferiors can now look up to, the path of his ascent, and there discover unintentional errors. He was a man, ¿í hwnantm est errare, and the doctrine then advanced by him, is a proof of this maxim.
v As it was not necessary to have settled this point m that cause, what was then said is not more than a dictum. And what seems conclusive of this asser *118 tion is, it was not considered as settling the law in Virginia; and the doctrine was doubted and questioned by the profession long afterwards, as is evident from the case of Turner &c. vs. Chinn’s executors, 1 Hen. and Munf. 52. decided in 1800. And it was not till 1810, in the case of Gordon’s administrators vs. the Frederick justices, that the point was finally determined; and then the weight of Pendleton’s character against the reason of the case, turned the scale. But I am satisfied that the point in this country has never been considered at rest, and that doubts have always existed in the minds of the profession, whether the authority of the cases in Virginia, or the spirit of the statute and philosophy of the law would finally succeed. The question is one on which the authorities of Virginia cannot have become a ride of property, and I am prepared, therefore, to decide the question as one heretofore unsettled in thi* State, and to follow what I conceive the law to be, against the dictum of even a Pendleton.
Henson, for plaintiff; Triplett, for defendant.
But notwithstanding my non-currenee in this point, I concur in the reversal of the judgment. For the return of the sheriff is not a return of nulla bona, or that he could find no estate, hut that the administrator had none in his hands in his bailiwick, thus shewing that the administrator had fully administered, instead of his having estate and concealing it. Besides the return is made by deputy sheriff and only applies to his own bailiwick and not to the county, in another part of which the administrator might reside; and such return according to previous decisions, cannot be held ex vi iermw ni, to extend to the county.